IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| MEDYTOX INC., <br><br> Plaintiff, <br><br> v. <br><br> DAEWOONG CO., LTD. and DAEWOONG PHARMACEUTICAL CO., LTD. <br><br> Defendants. | Case No. 1:21-cv-607 (LMB/IDD) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT WITHOUT PREJUDICE PURSUANT TO FRCP 41(a)(2)**

Plaintiff Medytox Inc. ("Medytox") moves this Court for entry of an Order dismissing Medytox's complaint without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). Medytox requests this Order pursuant to Rule 41(a)(2), rather than withdrawing by notice under Rule 41(a)(1), so that Defendants cannot unfairly count this dismissal toward the two-dismissal limit of Rule 41(a)(1).

## BACKGROUND

Medytox is a Korean manufacturer of botulinum neurotoxin ("BTX") products. BTX products are biologics that are known for their aesthetic indications (such as the well-known BOTOX® Cosmetic product made by Allergan) and also have therapeutic applications. Defendant Daewoong Co. Ltd. and Defendant Daewoong Pharmaceutical Co., Ltd. (collectively "Daewoong") misappropriated Medytox's manufacturing process trade secrets for making BTX products and used them to secure a patent from the U.S. Patent and Trademark Office ("PTO"). U.S. Patent 9,512,418 B2 (the "'418 Patent") claims a method for production of botulinum toxin.

As set forth in the complaint, the core inventions claimed in the '418 Patent were conceived and developed by Medytox researchers and belong to Medytox.

The fact that Daewoong misappropriated Medytox's manufacturing process trade secrets and used them to develop the manufacturing process that it claims as its own has already been determined by the U.S. International Trade Commission ("ITC"). Based on the comprehensive record developed in the investigation, including extensive factual and expert discovery and a four-day evidentiary hearing followed by post-hearing briefing, the ITC determined that Medytox's proprietary manufacturing process trade secrets were misappropriated and used by Daewoong and its partner and exclusive distributor in the U.S. for the sale of Daewoong's BTX products for aesthetic applications, Evolus, Inc. *See In re Certain Botulinum Toxin Products, Processes for Manufacturing or Relating to Same and Certain Products Containing Same*, U.S. ITC Inv. 337-TA-1145 (the "ITC Investigation"). The ITC found that Daewoong and Evolus violated section 337 of the Tariff Act of 1930 (19 U.S.C. § 1337) through the misappropriation of Medytox's manufacturing process trade secrets in the development of Daewoong's BTX products. On that basis, the ITC issued an exclusion order and cease and desist order prohibiting the importation and sale in the United States of Daewoong's BTX products. *Certain Botulinum Toxin Prods., Processes for Mfg. or Relating to Same and Certain Prods. Containing Same*, Inv. No. 337-TA-1145, USITC Pub. 728167, Limited Exclusion Order (Dec. 16, 2020); *Certain Botulinum Toxin Prods., Processes for Mfg. or Relating to Same and Certain Prods. Containing Same*, Inv. No. 337-TA-1145, USITC Pub. 728168, Cease and Desist Order (Dec. 16, 2020).

Medytox subsequently reached a settlement with Evolus that, in exchange for Evolus's agreement to make certain upfront payments and royalties and to convey common stock to Medytox, grants Evolus a license to import and sell the aesthetic BTX products that were at issue

in the ITC Investigation. Daewoong is not a party to that settlement and thus is not a "party to the mutual releases of liability, covenants not to sue, or licenses granted to Evolus." *Certain Botulinum Toxin Prods., Processes for Mfg. or Relating to Same and Certain Prods. Containing Same*, Inv. No. 337-TA-1145, USITC Pub. 735885, Joint Pet. of Complainants Medytox and Allergan and Resp't Evolus to Rescind the Limited Exclusion Order and the Cease and Desist Order, Exhibit B at ¶¶ 8.1, 11.1 (Mar. 3, 2021).

On May 14, 2021, Medytox filed this lawsuit to obtain the equitable assignment of Daewoong's ownership rights in the '418 Patent to Medytox based on the fact that Daewoong obtained the '418 Patent by wrongfully taking Medytox's manufacturing process inventions and claiming them as its own. The complaint also sought to correct the errors in inventorship in the '418 Patent – specifically to add Medytox's CEO, Dr. Hyun Ho Jung, and one of its senior researchers, Hack Woo Kim, as inventors.

On the same date, Medytox filed an action in the United States District Court for the Central District of California asserting claims under the Defend Trade Secrets Act (18 U.S. Code § 1836) against Daewoong and its partner and exclusive distributor of Daewoong's BTX products for therapeutic applications in the United States, AEON Biopharma, Inc. ("AEON"). *Medytox Inc. v. Aeon Biopharma, Inc.,* No. 8:21-cv-00903 (C.D. Cal. May 14, 2021).[1]

On June 21, Medytox and AEON entered into a settlement under which AEON has issued Medytox 26.68 million shares of common stock, equivalent to 20% of AEON's currently outstanding shares, and has agreed to pay Medytox a royalty on net sales of licensed products

---

[1] As noted, BTX products have both aesthetic and therapeutic applications. Evolus is Daewoong's U.S. partner and exclusive distributor for BTX products for aesthetic applications, and AEON is Daewoong's U.S. partner and exclusive distributor for BTX products for therapeutic applications.

3

over a 15-year royalty period.  In exchange, Medytox has granted a license to AEON for its BTX products made by Daewoong.  Pursuant to the settlement, Medytox dismissed its claims against AEON in the Central District of California suit with prejudice.  Notice of Voluntary Dismissal, ECF No. 18.[2]  Like the settlement agreement with Evolus, Daewoong is not a party to the AEON settlement agreement.

      Because Evolus and AEON hold the exclusive rights to sell the Daewoong BTX products in the United States, the result of Medytox's settlement and license agreements with Evolus and AEON is that the economic justification for proceeding with the current lawsuit is no longer present.  As relevant here, Daewoong's BTX products that are imported and sold in the United States would be the likely targets of an infringement claim under the '418 Patent if Medytox were to succeed in obtaining equitable assignment of the patent.  These products are now licensed pursuant to Medytox's settlements with Evolus and AEON.  While it is theoretically possible that circumstances could change, such that Daewoong or another company would attempt to import and sell the Daewoong BTX products in the U.S., there is no indication at

---

[2]     Because the settlement with AEON, combined with the settlement with Evolus, means that Medytox has now granted licenses to the exclusive distributors of Daewoong's BTX products in the United States in exchange for substantial equity and royalty payments, Medytox agreed not to oppose the dismissal based on mootness of the appeals from the ITC decision, with the understanding that this in turn would lead to vacatur of the ITC's decision.  *See* Medytox's Statement of Non-Opposition to Mots. to Dismiss Appeals as Moot, *Allergan Ltd. v. ITC*, No. 21-1653 (Fed. Cir. June 28, 2021).  The Federal Circuit has accordingly dismissed the appeals based on mootness and remanded to the ITC.  Order, *Allergan Ltd. v. ITC*, No. 21-1653 (Fed. Cir. July 26, 2021).  As the ITC has explained, parties can rely on ITC decisions even when they are vacated: "[L]itigants may rely on a vacated Commission opinion not only before a district court, but also before the Commission itself."  *In re Certain Air Mattress Sys., Components Thereof, & Methods of Using the Same*, Inv. No. 337-TA-971, Comm'n Op., 2020 WL 861520, at *3 (USITC Feb. 19, 2020) ("*Certain Air Mattress Sys.*"); *see also In re Certain L-Tryptophan, L-Tryptophan Products, & Their Methods of Production*, Inv. No. 337-TA-1005, Comm'n Op., 2020 WL 4500710, at **2-3 (Mar. 5, 2020).

present that such a scenario is likely to occur.  Accordingly, Medytox asks the Court to dismiss this suit without prejudice under Rule 41(a)(2).[3]

## ARGUMENT

Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Such dismissal is permitted at "any time unless dismissal will unfairly prejudice the parties."  *Taylor v. Atlas Safety Equipment Co., Inc.*, 1992 WL 367985, *1 (E.D. Va. Nov. 13, 1992).

In an abundance of caution, rather than file voluntary withdrawal, Medytox brings its motion pursuant to Rule 41(a)(2) to avoid any possible application of the two-dismissal rule of Rule 41(a)(1).  The two-dismissal rule provides that "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits."  Fed. R. Civ. Pr. 41(a)(1)(B).  A plaintiff may request a court-ordered dismissal under Rule 41(a)(2) to avoid the two-dismissal rule.  *See Wellfount Corp. v. Hennis Care Ctr. of Bolivar, Inc.*, 951 F.3d 769, 771-773 (6th Cir. 2020) (noting that the "[plaintiff] had deliberately chosen to seek a court-ordered dismissal under Rule 41(a)(2) so as to avoid the claim-preclusive effect of Rule 41(a)(1)(B)").

As discussed, there is a case pending against Daewoong in the Central District of California based on the misappropriation and use of Medytox's trade secrets in connection with Daewoong's therapeutic BTX products that will be distributed by AEON.  The California case presents different and distinct claims from those in this case.  The voluntary dismissal of this

---

[3] Medytox has similarly filed a motion in the C.D. Cal. suit to dismiss its claims against Daewoong without prejudice pursuant to Rule 41(a)(2). *Medytox Inc. v. Aeon Biopharma, Inc.*, No. 8:21-cv-00903, (C.D. Cal.) Pl.'s Mot. to Dismiss, ECF No. 19.  That motion has been scheduled for hearing on January 28, 2022, which was the earliest available date on the Court's schedule.

case and the California case should not trigger the two-dismissal rule were Medytox to bring another claim against Daewoong.  However, to avoid any risk of triggering the two-dismissal rule, Medytox seeks a dismissal without prejudice under Rule 41(a)(2).

If Daewoong were to attempt to circumvent Medytox's settlements with Evolus and AEON by entering into an agreement with another partner or to sell BTX products on its own in the U.S., Medytox may need to bring suit to address that scenario.  It would be unjust for Medytox to lose its ability to enforce its intellectual property rights against Daewoong, based on the two-dismissal rule, simply because its settlements with other parties have effectively removed the economic justification for proceeding with the current suit.

Daewoong will not be prejudiced by a court dismissal of Medytox's complaint. Daewoong has not yet been served with the complaint (as it declined to accept a request for waiver of service); nor has it filed an answer to the complaint or a motion for summary judgment.  Thus, Daewoong has not needed to participate in this suit.  Dismissing the complaint by court order would not compromise the two-dismissal rule.  *See Wellfount, Corp.*, 951 F.3d at 774 (finding that a dismissal under Rule 41(a)(2) at "the earliest stages of a lawsuit" would not "nullify the two-dismissal rule").

Further, Medytox had good reason to file its complaint.  Daewoong misappropriated Medytox's manufacturing process trade secrets and used them to obtain a patent from the U.S. Patent and Trademark Office.  The ITC has already determined that Daewoong engaged in the misappropriation of Medytox trade secrets that forms the basis of this suit.

Medytox does not seek dismissal of its complaint to harass Daewoong.  *Sutton Place Dev. Co. v. Abacus Mortg. Inv. Co.*, 826 F.2d 637, 640 (7th Cir. 1987) (explaining that the purpose of the two dismissal rule is to prevent "unreasonable abuse and harassment" by

plaintiff).  Rather, Medytox is willing to dismiss this suit because the economic justification for proceeding with it is no longer present.  This sensible decision not to proceed benefits the Court and Daewoong.  In being willing to take this step at this time, Medytox should not be faced with the risk (even if a small one) that, if circumstances were to change, it might be barred by the two-dismissal rule from seeking to pursue its claims in the future.

Accordingly, Medytox respectfully asks that the Court dismiss the lawsuit without prejudice pursuant to Rule 41(a)(2).

Dated: September 29, 2021

Respectfully submitted,

By: */s/ Chad E. Kurtz*
Chad E. Kurtz (VSB No. 88863)
**Cozen O'Connor**
1200 19th Street, NW
Washington D.C. 20036
Telephone:  (202) 912-4800
Fax: (202) 861-1905
ckurtz@cozen.com

David H. Herrington (*pro hac vice*)
Arminda B. Bepko (*pro hac vice*)
**Cleary Gottlieb Steen & Hamilton LLP**
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Fax: (212) 225-3999
dherrington@cgsh.com
abepko@cgsh.com

Nowell D. Bamberger (*pro hac vice*)
**Cleary Gottlieb Steen & Hamilton LLP**
2112 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 974-1500
Fax: (202) 974-1999
nbamberger@cgsh.com

*Attorneys for Plaintiff Medytox Inc.*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on September 29, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record, and that I will cause a courtesy copy of this Memorandum to be delivered to counsel that has represented Defendants Daewoong Co., Ltd. and Daewoong Pharmaceutical Co., Ltd. in related proceedings. Additionally, I will cause Defendants to be served with this Memorandum via mail at the following addresses:

Daewoong Co., Ltd.
244 Galmachi-ro Jungwon-gu Seongnam-Si, Korea 13211

Daewoong Co., Ltd.
Bongeunsaro 114-gil 12, Gangnam, Seoul, Korea 06170

Daewoong Pharmaceutical Co.
Bongeunsaro 114-gil 12, Gangnam, Seoul, Korea 06170

By: */s/ Chad E. Kurtz*
Chad E. Kurtz (VSB No. 88863)
**Cozen O'Connor**
1200 19th Street, NW
Washington D.C. 20036
Telephone: (202) 912-4800
Fax: (202) 861-1905
ckurtz@cozen.com